### LYONS *v.* O. HINCKLEY.   HINCKLEY *v.* LYONS.

Article 446 of the Civil Code does not establish against the proprietor of the soil, on the banks of navigable streams, a servitude in favor of the public at large, *for all purposes*, but only for such as are incident to the nature and the navigable character of the streams washing the land of such proprietor.

The Act passed Feb. 7th, 1829, relative to roads and levees, establishing a highway on the banks of bayous, &c, &c., does not apply to those streams or bayous running through a high country, not subject to overflow, and when the roads are made directly across the country and not along the winding of the streams.

APPEAL from the District Court of St. Landry. *Dupré J.*
*Morrogh & Mouton* and *J. H. Overton,* for *Lyons.* *T. H. Lewis & Porter,* for *Hinckley,* appellant.

MERRICK, C. J.. The defendants, *Hinckley,* and others, are in possession of a lot of a ground of about three acres in the town of Washington, situated on the bayou Courtableau. This tract of land was used as a tan yard as long ago as 1833, for which purpose it is still occupied. No public road was laid out previous to this controversy, or used on this part of the Bayou, except to go to defendant's tan yard. About the time of the commencement of this litigation in July, 1854, the plaintiff put up a saw mill on the small tract or lot on the bayou above that of the defendants.. He claims that the defendants shall suffer a road to be opened in front of their tract of land, on the bayou. It is proved that the land on the bayou beyond the mill is broken, that the road is of no public utility further than to enable people to go to plaintiff's mill, that

LYONS
*v*
HINCKLEY.

the mill stands partially in the line of the road and that there would be no cause or reason to extend the road up the bayou beyond the mill, and that the plaintiff has no egress for carriages to the public roads, except across private property, unless it be determined that the public have the right to a highway across the front of the defendant's land. It appears by so much of the plan of Washington as is in evidence, that no public street was laid out to intersect or touch the lot of the plaintiff, and the street forming the public landing of the town on the bayou, terminates at the lower line of defendant's tract of land. The land on the bayou in the town of Washington, appears to be high, and consequently not subject to overflow at any stage of water.

The defendants have enjoined the plaintiff in the second of these consolidated cases. Judgment was rendered in favor of plaintiff, sustaining his pretensions and for three hundred dollars damages, on account of the wrongful suing out of the injunction. The defendant in the first, and plaintiff in the second suit, have appealed.

It is contended on behalf of the plaintiff that inasmuch as the bayou Courtableau is a navigable stream and connected with the Mississippi river, that the plaintiff has a right to a road in front of the defendant's land lying upon the bayou, in virtue of the Act approved Feb. 7, 1829, relative to roads and levees, and Art. 446 and 661 of the Civil Code. The ninth section of the Act of 1829, p. 80, is in these words:

"That every owner of lands, situated on the banks of the river or bayous running to and from the same or other waters connected therewith throughout this State, shall be bound to give to the public, and to keep constantly in good repair, a highway at least twenty-five feet wide, on the whole front of his property, which highway shall be swelled in its centre, and be lined on each side by a draining ditch at least one foot wide, and one foot deep; provided that these two ditches shall communicate with each other by means of ditches at least two feet wide, which shall be made across the road at least one for every four arpents, and which shall be extended in the depth of the land so as to drain the said highway, and to facilitate the running off of the waters which filtrate through the levees; provided also that the portions of the ditches which shall cross the highway, shall be covered with bridges, each of which shall be at least twenty feet long and one-third wider than the ditch, and be made with planks two inches thick, nailed or pinned on five joists, placed level with the road in such a manner that by means of each being added on both sides, the height of said bridges be not so sensible as to hinder the free passage of carriages or carts; provided that the provisions of this section shall not apply to the parishes of West and East Feliciana and that part of the parish of East Baton Rouge lying above the town of Baton Rouge."

It is evident that the above section is broad enough to cover the case before us. But it is contended by the defendant's counsel, that the present case was not intended to be embraced by the statute, because the land bordering upon the bayou being high land, does not possess any of the characteristics of the land over which the roads mentioned in said section were expected to pass, and that as the lands now under consideration are like the excepted lands in Baton Rouge and East and West Feliciana they must, by a reasonable and fair construction of the statute, be considered as excepted from its operation.

To this it is replied that the Civil Code by making the banks of navigable rivers public, have given the public a right of way over them and the statute

in question does not repeal the article of the Code, but is in aid of them by reg ulating the width of the road and manner in which the same shall be made. This reply is not well founded. Article 446 provides that "the use of the banks of navigable rivers or streams is public, accordingly every one has a right freely to bring his vessels to land there, to make fast the same to trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets and the like."

Nevertheless, the property of the river banks belongs to those who possess the adjacent lands.

The character of the servitude which is due from the proprietors of the soil is here described, and instead of being for the use of the public at large for all purposes, is only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor. 5 Ann. 36. This servitude is also confined to the *banks* of the navigable stream. It has been judicially determined that the banks of the Mississippi are that portion between the levees and the water. 8 Rob. 214.

As to those water courses which are enclosed, or bounded by high lands, the banks are those portions of land between the water's edge and the highest line attained by high water. *Ripa ea putatir esse quae plenissimun flunen conti-net*, Dig. 43, 12, 3, 1. The public cannot claim the use of the entire surface of the declivity of a hill or mountain, the base of which is washed by a navi-gable stream.

We think, therefore, that the articles of the Civil Code give no additional force at least to so much of plaintiff's demand, as applies to that part of the road sought to be made above the true bank of the bayou, and the case there-fore depends upon the construction of the Act of 1829. The title of this Act is "An Act relative to Roads and Levees."

The first section of the Act shows what was intended to be embraced in it, and at once indicates its scope and object. It is in these words. Be it enacted &c., "That throughout all the portion of the State watered by the Mississippi and the bayous running to and from the same which are settled, where levees are necessary to confine the waters of that river, and to shelter the inhabitants against inundations, the said levees shall be made by the riparian proprietors in the proportions and at the time hereafter prescribed."

Here, then, the object of the Act is apparent. It is a matter of public neces-sity, and to shelter the inhabitants against inundations. As each proprietor was personally interested in his own protection as well as his neighbors, and as the roads must of necessity pass upon the front of the river or bayous, and the contribution of each land owner will be as equal as the same can be as-sessed, and as the property will be of no value without the levee, the legisla-ture had the power to compel such riparian owners to make those levees and roads in front of their plantations without further compensation than the in-creased value which such works would confer upon their lands.

But this statute was not intended to apply to those streams or bayous run-ning through a high country not subject to overflows, and where the roads are made directly across the country and not along the windings of the streams.

This being the character of the country about Washington, the reason of the law ceases, and the law itself must be held to have ceased particularly as otherwise it would be in direct conflict with Art. 105 of the Constitution,

which declares that vested rights shall not be divested, unless for purposes of public utility, and for adequate compensation previously made.

This controversy, it must be borne in mind, is one in regard to the right of the plaintiff, *Lyons*, under the authority of the town of Washington to open and use a highway, or street, through the lands of the defendants, without making the indemnity required by the Constitution, and this decision must not be considered as an expression of opinion upon the power of the Corporation, if any such it have; under the Act of 1852, p. 77, to regulate the landing upon such parts of the banks of the Bayou Courtableau, within the town, as may be public.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; that the said suit of *John Lyons* v. *Hinckley & Johnson*, numbered on the docket of the lower court as No. 7250, be dismissed, and the injunction therein dissolved; that in the suit of said *Oraniel Hinckley*, *William Offit*, *Nathaniel Offit* and *James Johnson*, against said *John Lyons*, there be judgment in favor of said last mentioned plaintiffs and against said *John Lyons*, and that said *Lyons* be perpetually injoined from making a road across the said premises of said last mentioned plaintiffs, and from using their said premises for the purposes of a public highway, or private road, and it is further ordered that the said *Lyons* pay the costs of both courts.