(138 So. 650)

**PIZANIE v. GAUTHREAUX.**

No. 29765.

Nov. 30, 1931.

C. A. Buchler, of Gretna, for appellant.

F. A. Middleton, of New Orleans, for appellee.

OVERTON, J.

This is a suit for an injunction to restrain defendant from trespassing upon the property of plaintiff for the purpose of gaining access to a wharf, erected by him upon the bank of Bayou Segnette, and there selling and distributing gasoline and other oils to the boats engaged in supplying sea food to the canning factory, owned by plaintiff.

The wharf is erected opposite land which plaintiff holds under a contract to purchase. This contract has been partially executed, and gives plaintiff the right of possession. The land is located in the corporate limits of the town of Westwego, a municipal corporation containing a population of less than 5,000 inhabitants, and borders on Bayou Segnette, which is a navigable stream.

Plaintiff erected on this land, near the bank of the bayou, a factory for the canning of

shrimp. The factory is now leased. He has caused to be erected, by arrangements made with others, a wharf on the bank of the bayou, in front of his property, about 265 feet long, and extending, at some points, about 5 feet into the bayou, for the convenience of himself and his lessees. The boats landing at the wharf are largely those engaged in the fishing business.

Plaintiff, who is a commission merchant, buys fish and other articles of sea food from these boats, and these also supply the canning factory with shrimp. In order to supply the boats with ice, which is necessary to preserve the fish, plaintiff made arrangements with the Louisiana Ice & Coal Company to furnish ice over his wharf, and, in order to supply them with gasoline and oil to enable them to operate, he made arrangements with the Jefferson Oil Company, to supply these articles.

The Jefferson Oil Company constructed at least a part of the wharf, and leased that part from plaintiff under an agreement by which plaintiff receives a small cash payment a month and a percentage of all oil and gasoline sold over the wharf. The wharf is therefore a matter of convenience to the boats, to plaintiff, and to his lessees, as well as profit.

Defendant is also engaged in the gasoline and oil business, and proceeded, over plaintiff's protest, to cross a narrow strip of land between the public road and the bank of the bayou, claimed by plaintiff, to unload drums of oil on the strip, and to sell oil and gasoline over the wharf to the boats landed there, and, in fact, was doing these things. This brought about the present application for a writ of injunction.

The trial court, in rendering judgment, was of the opinion that plaintiff could not enjoin defendant from going upon the road, used by the general public, and thence upon that part of the wharf under the control of the Louisiana Ice & Coal Company, which had made no complaint, for the purpose of delivering oil to the boats moored thereto, but that, in other respects, plaintiff is entitled to some relief, and therefore ordered that a preliminary injunction issue restraining defendant from going upon the property of plaintiff, situated on Bayou Segnette, excepting the use of the road, used by the general public, and the property under the control of the Louisiana Ice & Coal Company, as stated above, and no further. As we appreciate the judgment, it orders a preliminary injunction to issue restraining defendant from going over the narrow strip of ground, claimed by plaintiff, to and over that part of the wharf, leased to the Jefferson Oil Company, which company protested to plaintiff, because of defendant's conduct, and from which company plaintiff was receiving remuneration in the way of percentage from all sales, made by it to the boats from the wharf, of oil and gasoline, but in all other respects declines to issue the writ. No complaint is made by plaintiff of the judgment rendered. Defendant alone complains.

Westwego, in which the property is located, is a town outside of the limits of the port of New Orleans, and is a municipality containing a population of less than 5,000 inhabitants. Therefore section 30 of article 14 of the Constitution of 1921 has no application to the case. Defendant, however, relies on articles 455 and 665 of the Civil Code, the former of which declares that:

"The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.

"Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands."

The latter of these articles declares that:

"Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.

"All that relates to this kind of servitude is determined by laws or particular regulations."

The expression "the river bank," used in the last sentence, where there are no levees, as is the case here, means the land lying between the edge of the water at its ordinary low stage and the line which the edge of the water reaches in its ordinary high stage. Wemple v. Eastham, 150 La. 248, 90 So. 637; Civil Code, art. 457. It is the bank that belongs to the owner, subject to use by the public for certain purposes, described in the article. The bed of the stream is the land that is covered by the water in its ordinary low stage. The bed belongs to the state in her sovereign capacity. Wemple v. Eastham, supra.

From the foregoing articles defendant argues that he has a right to go from the public road—the road, under his contention, extending to the bank of the stream—onto that part of the wharf of plaintiff, used by the Jefferson Oil Company, and from there, deliver and sell oil and gasoline to boats, moored at the wharf, freely and at will, and without interference by plaintiff. It is also defendant's contention that plaintiff obtained no permit from the Secretary of War and from the state, through any authorized political subdivision, or otherwise, to erect the wharf.

In our opinion, it is a matter of no importance in this case whether or not the proper permits were obtained by plaintiff to construct the wharf. The wharf itself, including the timber in it, is plaintiff's property. If the wharf was constructed without proper governmental authority, this may give defendant the right, as suggested by article 861 of the Civil Code, to cause it to be destroyed, but it does not give defendant the right to use it freely at will. If plaintiff will not permit defendant to use the wharf for reasonable compensation, it may be that, by appeal to the proper authorities, he may force him to do so, but he cannot use plaintiff's property without compensation, which he was doing. Moreover, so far as appears, the public have appropriated only about 28 feet of that part of plaintiff's land that is subject to a servitude for road purposes, thus leaving a narrow strip between the road and the bank of the stream unappropriated, to the use of which plaintiff is entitled. Ward v. Board of Levee Commissioners, 152 La. 158, 92 So. 769. Defendant has no right to use this strip, so long as it remains unappropriated to road purposes.

We find no reason to alter the judgment, ordering the preliminary injunction to issue.

The judgment is affirmed.