Dear Mr. Levy:
You have requested an opinion from this Office pertaining to whether or not a private citizen, while parked on a public road right-of-way, has the authority to withdraw water from a running creek through a hose and deposit the water into a tanker truck for that citizen's own private use.
FACTS:
Oil and gas service companies go to the nearest water source, in this case, Mackeroy Creek, to re-supply their tanker trucks. In this case, the tanker truck parks on a public road right-of-way and uses a hose to pump the water from the creek to the tanker truck. Although we address some portions of your question, the ultimate answer hinges upon factual determinations that this office cannot make. Consequently, we make two critical factual assumptions. Initially, we need to know whether or not the water in the "stream" (i.e., Mackeroy Creek) is "running water." Both in your letter and in conversations with your office it has been indicated that the water in Mackeroy Creek is "running water". Thus, for the purpose of this opinion only, we assume that the water in Mackeroy Creek is "running water." Second, through our conversations, your office has also informed us that the "private citizen" who is drawing water from the creek is not a riparian owner and that the riparian owners have not purported to transfer their riparian rights associated with the water to the citizen removing the water from the Mackeroy Creek. Therefore, for the purpose of this opinion only, we also make the assumption that the riparian owner is not withdrawing the water and has not attempted to transfer any of his or her riparian rights to anyone. *Page 2 
We further caution that this opinion is intended to apply only to the water and not to the water bottom over which the water flows or upon which the water sits. The distinction between the water and the water bottom is important with regard to the ownership of the water. It is also important to bear in mind that the question of whether or not Mackeroy Creek is a navigable water way has no bearing on the ownership of the actual running water.
BACKGROUND LAW
Under Louisiana law, the beds of naturally navigable water bodies are public things and the beds of non-navigable water bodies are private things. See La.C.C. Art. 450. However, the waterrunning in a water body, whether navigable or not, is a public thing subject to public use. Id. See also La.C.C. Art. 452; La.R.S. 9:1101. Landowners with riparian property and members of the general public have the right to use running water for their needs, the latter only if they have access to it. Members of the general public do not have the right to cross private lands, without some authority granted by the private landowner, in order to access running water. See Pizanie v. Gauthreaux,138 So. 650 (La. 1931); Delahoussaye v. Patout, Labau andCo., 81 So. 215 (La. 1919).
The owner of an estate fronting on a river or stream has, in addition to the right of public use, a riparian right for the use of the water. La.C.C. Art. 657 explains that the owner of a riparian estate may use the water as it runs for agricultural or other purposes.[1] An owner whose estate is traversed by running water has an additional privilege. Article 658 of the Louisiana Civil Code authorizes such an owner to change the water's course within his property. However, he cannot prevent or redirect the flow of the water. Rather, "he is bound to return it to its ordinary channel where it leaves his estate." La.C.C. Art. 658. With the exception of preventing a trespass of his own land, a riparian owner may not exclude the public use of the running water or the use of the water by other upstream or downstream riparian landowners. Id.
The riparian rights defined in the Civil Code are considered "accessory rights," which attach to riparian lands because of their adjacency to the water source. Delachaise v. Maginnis,11 So. 715, 716 (La. 1892). It remains an open issue whether or not the right to use water can be conveyed separately and distinctly from the land. See also La.C.C. Arts. 649, 650. The riparian right to use the water, a natural servitude, cannot be lost by non-use because prescription of non-use does not apply to natural servitudes. See La.C.C. Art. 758.
Whether one can transfer a riparian right separately and distinctly from the full ownership (fee title) to riparian land has never been addressed by the courts of this State. However, inKeeley v. Schexnailder, 1997-1609 (La. App. 3 Cir. 4/1/98); 708 So. 2d 838, *Page 3 
the court considered a riparian landowner's grant of a servitude of access to the waterfront to a non-riparian landowner. In upholding the right of access, the court did not address whether it would uphold a grant of the right to withdraw water.Id. at 843.[2] Even if the court had considered whether a right to withdraw water could be granted by the riparian owner, it is extremely unlikely that that grant could exceed the rights of the riparian owner because one cannot grant greater rights to a thing than one owns.
Based upon the above analysis, as we have assumed for this opinion, the water in question is running water, there is no perse private ownership of that water under Louisiana law. Thus, the State of Louisiana owns the water in its capacity as a public person and holds it in trust for the people of the State. Because the running water belongs to the State, La.Const. Art. VII, § 14 applies. This law provides:
Except as otherwise provided by this constitution, the . . . property, or things of value of the state or any political subdivision shall not be . . . donated to or for any person, association, or corporation, public or private.
Accordingly, running water or impounded running water is not allowed to be taken out of a channel in a volume that would impair the rights of riparian owners. Running water is a thing of value that belongs to the people of the State of Louisiana. Thus, we are of the opinion that running water is a State-owned resource that has value and that must be purchased pursuant to the laws governing the sale of State property if it is to be used for anything other than a public purpose.
Specifically, with respect to your opinion request, Mackeroy Creek in Lincoln Parish is subject to the jurisdiction of the Lincoln Parish Reservoir Authority, (the "Authority"). La.R.S. 38:3087.283 created the Lincoln Parish Reservoir Authority. Paragraphs A and C provide:
A. The authority shall have for its purpose the development of the wealth and natural resources of the authority by the conservation of soil and water for agricultural, recreational, commercial, industrial, and sanitary *Page 4 
purposes. The creation and maintenance of reservoirs within the authority shall be for such purposes. The authority shall also have as one of its purposes economic development in the area.
and,
C. Pursuant to and in accordance with any statewide laws for the management, protection, or regulation of surface water, the authority shall have complete control over the supply of fresh water made available by its facilities, which shall be administered for the benefit of the persons residing or owning property within the jurisdiction of the authority, and if it should be for the benefit of the authority, it may sell such water for irrigation, municipal, and industrial uses both within and outside the authority's jurisdiction.
It is clear that, subject to the review and approval of the State of Louisiana, the Authority can sell the water made available by its facilities within its jurisdiction and may sell such water for irrigation, municipal, and industrial uses both within and outside the Authority's jurisdiction. La.R.S. 38:3087.287 (6) provides as one of the powers of the Authority, it may:
(6) Cooperate and contract with persons, firms, associations, partnerships, private corporations, municipalities of this state, or other public corporations, and with any other local, state, or federal agencies for the sale or use of any waters impounded by the authority.
In summary, the Authority is empowered to impound waters and create and maintain reservoirs to contain the water within its jurisdiction. Further, the Legislature has delegated to the Authority the right to control the supply of fresh water under its jurisdiction, subject to the review and approval of the State of Louisiana of any water sale agreement.
GENERAL GUIDANCE:
In the event that the Authority is presented with a request to transfer or sell State-owned surface waters within its statutory jurisdiction, the Authority should first review its statutory authority to determine if it is in fact authorized to sell the State-owned surface waters. If it is so statutorily-authorized, the Authority may enter into negotiations with the private entity for the sale of State-owned surface water, with the understanding that any such sale must be for fair value, and that any agreement must be reduced to writing in the form of a contract or cooperative endeavor agreement and, further, that any such agreement is subject to prior approval by the Office of the Attorney General and the Department of Natural Resources. *Page 5 
The prior written approval of the Attorney General and the Department of Natural Resources of any such agreement is mandated pursuant to the State constitutional obligations and mandates set forth in LA Const. Art. IX and which directs and requires these offices to protect the natural resources and the environment of the State.
Finally, until such time as the Legislature specifically provides for the allocation of any sums received from the sale of such waters (unless specific statutory direction already exists), any agreement for the sale of State owned surface water must include a provision that provides that all monies paid shall be placed in escrow and not released or expended without the written approval and consent of the Office of the Attorney General and the Department of Natural Resources. If such "specific direction already exists", the public entity claiming same should promptly notify in writing the Office of the Attorney General and the Department of Natural Resources of the statutory authority supporting this specific authority.
CONCLUSION:
Clearly, if the water in Mackeroy Creek in Lincoln Parish is running water, as we have assumed herein, it belongs to the State of Louisiana and is a public thing that cannot be donated by allowing a person with a tanker truck to pump it out of the creek from a public road right-of-way. When the Louisiana Legislature wants to authorize the sale of any public thing it usually does so clearly, as it has in La.R.S. 38:3087.287(6). It has authorized the Authority to impound the waters of Lincoln Parish to make a reservoir and it may sell the waters it impounds, subject to the review and approval of the State of Louisiana, because these waters are "made available by its facilities". However, a riparian owner may use the running water subject to the Civil Code restraints. Since we assume herein (only) that the person with the tanker truck on the public road right-of-way is not also the riparian owner, that person cannot take the water in contravention of the riparian owner's rights, and the rights of the State of Louisiana, which actually owns the running water as a public thing.
We trust that this analysis adequately responds to your request. Should you have any further questions or concerns, please do not hesitate to contact this Office.
Sincerely,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ Irys L.V. Allgood Assistant Attorney General
JDC/ILVA/jv
[1] See also Verzwyvelt v. Armstrong-Ratterree, Inc.,463 So.2d 979 (La. App. 3 Cir. 1985) (same result for an oxbow lake, former channel of Red River).
[2] The ownership and use of waters is also regulated by federal statutes touching upon the subject, scattered provisions in the Louisiana Revised Statutes, and a few provisions of the Louisiana Civil Code. Special purpose districts of the State of Louisiana are clearly authorized in Chapter 38 of the Revised Statutes to use and distribute surface water for non-riparian purposes. See La.Const. Art. 9, Sec. 1 (1974); La.R.S. 9:1101; 14:58; 38:216; 56:362; 56:1431; 56:1451. In addition, Irrigation Districts (La.R.S. 38:2101), the Sabine River Authority (La.R.S. 38:2321, etseq.), and Water Conservation Districts (La.R.S. 38:2551, etseq.) are given authority to control water usage in designated areas. Additionally, La.R.S. 38:218 imposes a penalty if waters are diverted from their natural course and are not returned to it without undue retardation. Probably more significant in terms of the volume of water involved have been specific legislative authorizations. See specifically: municipalities, La.R.S. 33:841; waterworks districts, La.R.S. 33:3815; waterworks companies, irrigation companies and irrigation districts. For companies, see specifically La.R.S. 45:61; for districts, see La.R.S. 38:2112; for a number of special purpose districts, see La.R.S. 38:2501, et seq.